UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ACCUFORM MANUFACTURING, INC.,

        Plaintiff,

v.                                     Case No. 8:19-cv-2220-T-33AEP

NATIONAL MARKER COMPANY,
BRADFORD MONTGOMERY, PETER
BLONIARZ, JOHN DONATI, and
REBECCA LONGO,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

      This matter comes before the Court upon Plaintiff's Accuform Manufacturing Inc. ("Accuform") Motion for Preliminary Injunction ("Motion") (Doc. 4) and the Defendants' response in opposition thereto (Doc. 29). Accuform initiated this action alleging various claims of breaches of post-employment restrictive covenants against Defendants Bradford Montgomery ("Montgomery"), Peter Bloniarz ("Bloniarz"), John Donati ("Donati"), Rebecca Longo ("Longo"), and National Marker Company ("National Marker") (collectively "Defendants") (Doc. 62)[1]. Specifically, the following counts are relevant to the pending Motion: Count I against Defendant Longo for an alleged breach of her non-compete agreement (*Id.* at 17-18); Count II against Defendants Montgomery, Bloniarz, and Longo for alleged breaches of their respective customer non-solicitation agreements (*Id.* at 18-20); Count III against Defendants Montgomery, Bloniarz, Longo, and Donati for alleged breaches of their

_____

[1] Accuform filed the original Verified Complaint (Doc. 1) on September 25, 2019. However, the operative pleading is the First Amended Verified Complaint (Doc. 62) filed on November 25, 2019.

respective employee non-solicitation agreements (*Id*. at 20-21); Count IV against Defendants Montgomery, Bloniarz, Longo, and Donati for alleged breaches of their respective confidentiality agreements (*Id*. at 22-23); and Count V against National Marker for tortious interference (*Id*. at 24-25). The undersigned subsequently conducted hearings on the Motion on October 18, 2019, November 20, 2019, and January 7, 2020. For the reasons that follow, it is recommended that the Motion for Preliminary Injunction (Doc. 4) be granted in part and denied in part as described herein.

## I.      Background

Accuform manufactures, markets, and sells facility identification products and safety signage to commercial and industrial facilities. *Id*. at 3 ¶12. Defendants Montgomery, Bloniarz, Donati, and Longo each worked for Accuform in separate capacities. *Id*. at ¶6-7. All were required to sign a "CONFIDENTIALITY, NONSOLICITATION, AND NONCOMPETITION AGREEMENT" ("Employment Agreement") with Accuform (*See* Doc. 4, Exs. A-D). These Agreements consisted of several restrictive covenants regarding post-employment, including, but not limited to, non-competition, non-solicitation, and confidentiality clauses (*See* Doc. 4, Ex. A). Specifically, the Employment Agreement states in pertinent part:

> 2. **Confidentiality:** You will (a) not use the Confidential Information in any other business or capacity; (b) maintain the absolute confidentiality of the Confidential Information during and after the term of employment or engagement by us; (c) not make unauthorized copies of any portion of the Confidential Information regardless of form or format; and (d) comply with all procedures we prescribe from time to time to prevent unauthorized use or disclosure of the Confidential Information.
> . . .
> 4. **Competitive Restrictions:** During the time period that you are employed or engaged by us or any of our affiliates, and for eighteen (18) months afterwards, unless we otherwise permit in writing, you must not directly or indirectly:
>
> > (b)      engage in a Competitive Business, directly or indirectly, on behalf of yourself or any other person or as an employee, proprietor, owner, partner, agent, contractor, employer, consultant, affiliate, or as a director, officer or associate or as a stockholder or owner of any person or entity within the Protected Area;

2

(d)     recruit or hire a person who is or was, within 6 months of such date, an employee of ours or our affiliates; and/or

(e)     on behalf of yourself or any other person, or in any capacity associated with any other person or entity, solicit, divert, take away, or interfere with any of the business, customers, referral sources, clients, or contractors of ours or our affiliates, as such may exist during the term of this Agreement or thereafter.

(Doc. 1, Ex. A, at ¶2-4).

Accuform was later acquired by Justrite Manufacturing Company, LLC ("Justrite"). Due to the acquisition, several departments consolidated, leaving many employees out of positions. Accuform gave Defendants Montgomery, Bloniarz, and Donati a choice to assume a new role at Justrite or sign a separation agreement[2] ("Separation Agreement"). Defendants Montgomery, Bloniarz, and Donati decided to depart from Accuform and each signed a Separation Agreement (*See* Doc. 30, Ex. B (Bloniarz Separation Agreement); Doc. 31, Ex. D (Donati Separation Agreement); and Doc. 33, Ex E (Montgomery Separation Agreement)). The Separation Agreement set out the terms for each Defendants' separation from Accuform/Justrite and detailed certain benefits in exchange for the release of any claims against Accuform. Notably, paragraph 10 of the Separation Agreements states that:

This Agreement sets out the entire agreement between you and Accuform and supersedes any and all prior oral or written agreements and understandings between you and Accuform *concerning your separation*.

*See* Doc. 30, Ex. B (emphasis added).

Accuform argues that preliminary injunctive relief is necessary because (1) Defendants Montgomery, Bloniarz, and Longo have solicited and continue to solicit Accuform customers in violation of paragraph 4(e) of their Employment Agreements; (2) Defendants Montgomery, Bloniarz, Longo and Donati, breached and continue to breach paragraph 4(d) of their

---

[2] Defendant Longo did not sign a separation agreement.

3

Employment Agreements by soliciting current Accuform employees to work for National Marker; and (3) all Defendants have misappropriated, disclosed, and used Accuform's confidential business information and continue to do so in violation of the confidentiality clauses of the Employment Agreements. (Doc. 4). Accuform alleges that due to the individual Defendants' breaches and threatened breaches of the Employment Agreements, Defendant National Marker has gained an unfair business advantage over Accuform. (Doc. 62 ¶49). In response, Defendants contend that injunctive relief is wholly inappropriate given that (1) Accuform allegedly released the individual Defendants from the restrictive covenants in their respective Employment Agreements, (2) Accuform cannot establish that the pertinent restrictive covenants are necessary to protect a legitimate business interest, (3) Accuform cannot establish irreparable harm, (4) the balancing of harms favors the Defendants, and (5) the relief sought would be adverse to the public interest. (Doc. 29).

The Court held an initial hearing on the Motion on October 18, 2019. After the hearing and upon approval of the Court, Accuform filed, in support of its' Motion, the Declaration of Rob Ogilbee ("Ogilbee") (Doc. 41), and Defendants Bloniarz and Montgomery filed supplemental declarations (Docs. 47, 48) in response Ogilbee's declaration.[3] Given the nature of the subsequently filed declarations, the Court conducted a hearing on November 20, 2019, during which the Court directed Accuform to confer with Defendants in an effort to identify a list of customers at issue in the matter. Accuform then filed under seal the pertinent customer lists (Doc. S-79), along with a Declaration of Ogilbee (Doc. 70, Ex. A), a Declaration of Erin Decoste ("Decoste") (Doc. 70, Ex. B) and a Supplemental Declaration of Ogilbee (Doc. 74),

---

[3]Notably, each of the individual Defendants previously filed declarations in support of the Defendants' Response (Doc. 29) in opposition to Accuform's Motion. (*See* Doc. 30 (Bloniarz Declaration), Doc. 31 (Donati Declaration), Doc. 32 (Longo Declaration), and Doc. 33 (Montgomery Declaration)).

which declarations explain the content of the pertinent customer lists.  Finally, on January 7, 2020, the Court conducted another hearing to address the filed customer lists and other matters, during which the Court granted Defendants' request to file Counter Declarations (Docs. 85, 86, 87), which take issue with Accuform's customer lists.

## II.      Standard of Review

The decision to grant or deny a preliminary injunction falls within the discretion of the district court.  *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002) (citation omitted); *Carillon Importers, Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997) (citation omitted).  In determining whether a preliminary injunction should issue, the court considers whether the moving party demonstrated (1) a substantial likelihood of success on the merits; (2) irreparable harm to the moving party unless the injunction issues; (3) that the threatened harm to the moving party outweighs the potential harm the proposed injunction may cause the opposing party if the injunction issues; and (4) if issued, the injunction would not disserve or be adverse to the public interest.  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted).  Since a preliminary injunction is an extraordinary and drastic remedy, a court should not issue a preliminary injunction unless the moving party clearly establishes the burden of persuasion as to each of the four prerequisites. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir. 2003).

### III.     Discussion

#### A.      Likelihood of Success on the Merits

The first factor in determining whether a preliminary injunction should issue is whether Accuform can show a substantial likelihood that it will prevail on the merits of its' claims.  The claims at issue in the Motion are the claims in Count II against Defendants Montgomery,

Bloniarz, and Longo for alleged breaches of their respective customer non-solicitation agreements (Doc. 62 at 18-20), in Count III against Defendants Montgomery, Bloniarz, Longo, and Donati for alleged breaches of their respective employee non-solicitation agreements (*Id.* at 20-21), in Count IV against Defendants Montgomery, Bloniarz, Longo, and Donati for alleged breaches of their respective confidentiality agreements (*Id*. at 22-23), and in Count V against National Marker for tortious interference (*Id*. at 24-25).[4]

As an initial matter, Defendants argue that the restrictive covenants in the individual Defendants' Employment Agreements are null in light of the Separation Agreements and subsequent communications by Accuform. (*See* Doc. 29 at 9-11). Specifically, the Defendants contend that the Separation Agreements serve as an integration of the original Employment Agreements, and thus releases the individual Defendants from the post-employment restrictive covenants. Defendants rely upon paragraph 10 of the Separation Agreement which states:

> This Agreement sets out the entire agreement between you and Accuform and supersedes any and all prior oral or written agreements and understandings between you and Accuform *concerning your separation*.

(*See e.g.*, Doc. 30, Ex. B ¶10) (emphasis added).

Additionally, Defendants rely upon oral discussions and email correspondence between Defendant Montgomery and Justrite's Vice President of Human Resources, Vickie Whitlock ("Whitlock") (*See* Doc. 33, Ex. F).   In his Declaration, Defendant Montgomery alleges that when he asked about paragraph 10 of the Separation Agreement and whether it released him from his "noncompete agreement," he was told that it did release him. Specifically, Defendant Montgomery asserts that:

> Ms. Whitlock unequivocally said "Yes." I took the inquiry a step further and asked if I could work for Accuform's competitor Brady, and Ms. Whitlock again answered,

---

[4]The claims in Count I against Defendant Longo for an alleged breach of her non-compete agreement (*Id*. at 17-18) are no longer at issue, as during the October 17, 2019 hearing, Accuform agreed to withdraw its request to enjoin Longo related to the allegations in Count I.

> "Yes". I then asked if I could work for National Marker, and Ms. Whitlock repeated, "Yes." Mr. Wilbert said I could work for 'anyone I wanted to'. I asked them if they would put that in writing, and they responded, with, "How much clearer do you want Number 10 to be?"

(Doc. 33 at 18 ¶5).

Further, Defendant Montgomery asserts that in email correspondence, Whitlock stated that, in reference to paragraph 10 of the Separation Agreement, "[t]he language is clear in that this agreement supersedes all other agreements." (Doc. 33, Ex. F).   Defendant Montgomery further states that John Murphy ("Murphy"), Vice President of Administration at Accuform, also verified that paragraph 10 of the Separation Agreement released him from his restrictive covenants in the Employment Agreement.  (*See* Doc. 33 at 19 ¶ 6).  Upon this correspondence, and alleged verbal communications (*see* Doc. 33, at ¶5), Defendants argue they are released from the enforcement of the post-employment restrictive covenants because the Separation Agreement is a complete integration of the Employment Agreement.[5]

Contrary to the Defendants' argument, the Separation Agreements cannot be construed to be an integration of the Employment Agreements because they do not concern the same subject matter as the Employment Agreements. *See Palm Beach Maritime Museum, Inc. v. Hapoalim Securities USA, Inc.*, No. 18-cv-80596, 2019 WL 2167727, at *2-3 (S.D. Fla. Jan. 28, 2019) (finding no novation of the contract, the parties did not enter into an entirely new and unambiguous agreement of equal or greater dignity to the agreement first made with respect to the same subject). Defendants base their argument on the fact that the Separation Agreements state that they supersede all previous oral and written agreements between Defendants and Accuform (*See* Doc. 33, Ex. E, at ¶2).  Additionally, Defendants argue that the oral discussion,

---

[5]Notably, Defendants Bloniarz and Donati also assert similar verbal communications.  *See* Doc. 30 at 14 (asserting that Whitlock told Bloniarz that he was free to work for anyone) and Doc. 31 ¶ 8 (stating that Murphy told Donati that Justrite could not enforce the noncompete because it was not a party to the agreement).

and email correspondence between Defendant Montgomery and Whitlock, reiterated by the oral discussion between Defendant Montgomery and Murphy, establishes that it was the parties' intentions that the Separation Agreements be an integration of the Employment Agreements. (*See* Doc. 33, Ex. F).    However, the Separation Agreements are only in reference to the *separation* of the Defendants' employment, and not in any way a reference to the prior Employment Agreements, and more specifically, to any of the post-employment restrictive covenants. Thus, no integration has occurred as the Defendants suggest.

Alternatively, Defendants argue that Whitlock's oral representations are an oral modification of the Employment Agreements, or a waiver of the Employment Agreements. If such a modification or waiver has occurred, Defendants would be released from the original obligations of the Employment Agreements. However, the Employment Agreements specifically mandate that:

> A waiver or amendment of this Agreement or any provision of it, will be valid and effective only if it is *in writing and signed by both parties or the party waiving such provision*. No waiver agreement will operate as waiver of any other term of this Agreement or of that same.

(Doc. 33, Ex. A, at ¶5) (emphasis added).

Here, the email correspondence would not constitute a written waiver because the language in the email is vague and lacks any mention of the material terms of the original Employment Agreements. Further, the email also does not qualify as any new consideration. *See e.g. McGuire v. Adex Corporation*, Case No. 8:15-cv-2670-T-27-AAS, 2017 WL 1422426, at *4 (M.D. Fla. Apr. 19, 2017) (holding that the email correspondence did not create an enforceable amendment to the Employment Agreement because it lacked material terms and a modification to a contract must be supported by new consideration as well as consent of both parties). Therefore, on this record, the Separation Agreements in no way infringe upon the validity of the Employment Agreements, and as such they are enforceable.

Given that the Employment Agreements here are enforceable, the Court must next decide if the restrictive covenants at issue are supported by legitimate business interests.  In Florida, a valid covenant-not-to-compete must be supported by "one or more legitimate business interests." Fla. Stat. § 532.335(1)(b). "Confidential information, goodwill, customer lists, and relationships with clients, all constitute legitimate interests which can be protected by covenants-not-to-compete." *Osborne Associates, Inc. v. Cangemi*, Case No. 3:17-cv-1135, 2017 WL 5443146 at *10 (M.D. Fla. Nov. 14, 2017). Under. Fla. Stat. § 532.335(1)(b) the term "legitimate business interest" includes:

> 1. Trade secrets, as defined in s. 688.002(4).
> 2. Valuable confidential business or professional information that otherwise does not qualify as trade secrets.
> 3. *Substantial relationships with specific prospective or existing customers, patients, or clients.*
> 4. Customer, patient, or client goodwill associated with:
>> a. An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress";
>> b. A specific geographic location; or
>> c. A specific marketing or trade area.
> 5. Extraordinary or specialized training.

*Id.* (emphasis added).

The Defendants argue that the Motion must fail because "Accuform relies solely on conclusory allegations of legitimate business interests alleged in the Verified Complaint to discharge its burden of proof."  (Doc. 29 at 13) (citing *Lucky Cousins Trucking, Inc.* v. *QC Energy Res. Texas, LLC*, 223 F. Supp. 3d 1221, 1226 (M.D. Fla. 2016))).  In other words, the Defendants assert that Accuform cannot establish a likelihood of success on the merits of its' claims because Accuform has not produced sufficient evidence in the record to meet its' burden as to each claim against each Defendant.  As discussed below, the Defendants' argument does have some merit as to some of the claims.

Examining the claims in the order as alleged in the First Amended Verified Complaint (Doc. 62), turning first to Accuform's claims in Count II against Defendants Montgomery, Bloniarz, and Longo ("Count II Defendants") for alleged breaches of their respective customer non-solicitation agreements (Doc. 62 at 18-20), the Court is satisfied that Accuform has sufficiently established a likelihood of success on this claim.  As detailed above, paragraph 4(e) prohibits the Count II Defendants from soliciting, diverting, taking away, or interfering with any of Accuform's business, customers, referral sources, clients, or contractors during the term of their respective Employment Agreements. *See,* Doc. 4, Exs. A, B, and D.  In Florida, an employers' right to prevent the solicitation of its customers is a legitimate business interest. *North American Products Corp. v. Moore,*  196 F. Supp. 2d 1217, 1228 (M.D. Fla. Apr. 2, 2002) ("[t]here is little question under Florida law that an employer has a legitimate business interest in prohibiting solicitation of its customers with whom the employee has a substantial relationship"). "Where an employee . . . gains substantial knowledge of his former employer's customers, their purchasing history, and their needs and specifications it follows that the employer has a legitimate business interest under the statute." *Id*.  Under. Fla. Stat. § 532.335(1)(b) a "legitimate business interest" includes substantial relationships with specific prospective or existing customers.  Thus, Accuform carries the burden to demonstrate a substantial relationship with specific customers.  *See Milner Voice and Data Inc. v. Tassy*, 377 F. Supp 2d 1209, 1218 (S.D. Fla. June 21, 2006) (stating that "Defendants have argued that in order to have a protectable interest in specific prospective or existing customer relationships, [Plaintiff] must prove that the Defendants themselves had a substantial relationship with the specific customers at issue. The Court does not accept Defendants' argument.  Relevant case law indicates *that the proper inquiry focuses on the relationship between an employer and its prospective and existing customers*; an employer

need not prove that its former employee himself had a substantial relationship with any particular customer.") (emphasis added).  Upon careful consideration of Ogilbee's Declarations (Docs. 41, 70, Ex. A and 74) and Decoste's Declaration (Doc. 70, Ex. B), the Court is satisfied that Accuform has met its burden to demonstrate a substantial relationship with the customers identified in the customer lists filed under seal (Doc. S-79).

In their supplemental declarations, (Docs. 85, 86 and 87) Defendants Bloniarz, Montgomery, and Donait dispute the nature of their relationship with a number of the customers identified in the sealed customer lists (Doc. S-79).  Although the relationship between the individual Defendants and any particular customer may be relevant, here, the Court is primarily focused on the relationship between Accuform and its customers. *See Milner Voice and Data Inc.,* 377 F. Supp 2d at 1218 (stating that an that the proper inquiry focuses on the relationship between an employer and its prospective and existing customers and an employer need not prove that its former employee himself had a substantial relationship with any particular customer).  Significantly, the customer lists only identify 189 customers of the 1,100 total customers of Accuform (Doc. 70, Ex. A at 5-6).  Further, the lists for the Count II Defendants were carefully crafted to identify the top 100 grossing customers for each of the respective Defendants' relevant responsibilities geographic sales territory.[6] *Id.* As detailed by Ogilbee in his declaration, the customers identified for the Count II Defendants represents less than 14% of the total customer accounts that Defendants Montgomery, Bloniarz, and Longo would have been responsible for in their respective territories or job assignments.  *Id.*  Given this record, Accuform has established substantial relationships with the customers identified in the sealed customer lists (Doc. S-79).

---

[6]Given the nature of Longo's work while employed at Accuform, only 12 customers were identified in connection to Longo.  (*See* Doc. 70, Ex. B).

The record also establishes that the Count II Defendants, Montgomery, Bloniarz, and Longo, have each had contacts with Accuform customers while employed at National Marker. (*See* Doc. 41 at 5-8) (citing Docs. 30, 31, 32 and 33). For example, Montgomery asserts that "[s]ince Justrite's acquisition of Accuform in about March of 2019, numerous customers have told me Accuform is a less desirable source of signage because the company does not timely respond to requests for price quotes or other information. These include representatives of Airgas, Dival, Medsafe, Fastenal, and Grainger" as well as "[d]istributor representatives . . . who have shared facts with me include personnel at Airgas, Grainger and Fastenal." (Doc. 33 at 30-31). Similarly, Bloniarz asserts that "[s]ince Justrite's acquisition of Accuform in about March of 2019, numerous customers have told me Accuform is a less desirable source of signage because the company does not timely respond to requests for price quotes or other information. Such customers include . . . Emergent; . . . Graiger; . . . Broner Glove and Saftety; . . . Safetywear; and employees of Fastenal . . . . (Doc. 30 at 21). And, Longo also asserts that "[s]ince Justrite's acquisition of Accuform, Accuform has developed a terrible reputation for its failure to timely respond to customers' correspondence. Many Accuform customers have contacted me to complain about it." (Doc. 32 at 13).[7]

Given the nature of these customer contacts by the Count II Defendants, the Court is satisfied that Accuform has established a likelihood of success that the Count II Defendants have breached paragraph 4(e) of Employment Agreements by soliciting, diverting, taking away, or interfering with Accuform's customers. (*See* Doc. 4, Exs. A, B, and D). As such,

---

[7]Although Donati is not a Count II Defendant, it is notable that Donati also asserts that "[s]ince Justrite's acquisition of Accuform in about March of 2019, numerous customers have told me Accuform is a less desirable source of signage because Accuform's customer service has become poor and the company does not timely respond to requests for price quotes or other information. These customers include . . . BBL Safety, . . . Arizona Glove and Safety . . . Mallory Safety and Supply, and many others at Grainger and Fastenal." (Doc. 31 at 17).

this factor favors entry of a preliminary injunction against the Count II Defendants, Montgomery, Bloniarz, and Longo, from continued contact with specific Accuform's customers, as identified in the record.

As for Count III, Accuform alleges that Defendants Montgomery, Bloniarz, Longo, and Donati have each breached paragraph 4(d) of their respective Employee Agreements by soliciting Accuform employees.  (Doc. 62 at 20-21).  The Defendants again argue that "Accuform relies solely on conclusory allegations of legitimate business interests alleged in the Verified Complaint to discharge its burden of proof," and thus Accuform cannot establish a likelihood of success on the merits of its claims in Count III (Doc. 29 at 13).  Specifically, the Defendants argue that Accuform has failed to produce any evidence to establish a legitimate business interest protected by paragraph 4(e) of the Employment Agreements. Accuform has alleged that it "has a legitimate business interest that is protected by the employee nonsolicitation provision including its substantial investment in its employees' specialized training regarding its industry, product lines, and sales practices. Additional legitimate business interests protected by the employee non-solicitation provision include the goodwill Accuform has built up with its customers in its industry, Accuform's valuable confidential business information, and its substantial relationships with it existing, previous, and prospective customers that it has expended considerable time, energy, and resources prospecting, developing, and maintaining.  (Doc. 62 ¶ 90).  However, the Court need not address whether Accuform has sufficiently established whether a legitimate business interest is protected by paragraph 4(d) because it is clear on this record that Accuform has failed to produce any evidence of record establishing that the individual Defendants have violated the terms of paragraph 4(d).

Paragraph 4(d) provides that the Defendants must not "recruit or hire a person who is or was, within 6 months of such date, an employee of [Accuform]." (Doc. 4, Exs. A, B, C, and D). In support of its claims in Count III, Accuform specifically alleges that:

> On information and belief, Defendant Montgomery solicited Defendant Longo to leave Accuform and commence work with National Marker in breach of the employee nonsolicitation covenant of his Non-Compete Agreement.

> On information and belief, Defendants Montgomery, Bloniarz, Donati, and Longo are all calling on and soliciting business on behalf of National Marker in competition with Accuform from the same customers they previously called upon and had substantial contacts with while working for Accuform.

(Doc. 62 ¶¶ 47-48).

Further, Accuform submitted the below LinkedIn message, in support of its' argument that Montgomery solicited an additional Accuform employee.

 **Brad Montgomery, CTSM** · 12:10 PM
A distributor is asking me what your "range" of salary is? Care to share? Doesn't have to be exact lol.

 **Jennifer Fehlberg** · 10:07 PM
lol

(Doc. 41, Ex. B).

Accuform's conclusory allegations in the First Amended Verified Complaint coupled with the vague LinkedIn message are clearly insufficient to establish that any of the individual Defendants have breached paragraph 4(d) of the Employment Agreements. Thus, on this record, Accuform has failed to establish a likelihood of success on its claims in Count III, and thus entry of a preliminary injunction against the Defendants from recruiting or hiring Accuform employees is unwarranted at this time.

Last, turning to Count IV, Accuform alleges that Defendants Montgomery, Bloniarz, Longo, and Donati each breached their respective confidentiality agreements in paragraph 2 of the Employment Agreements.  Accuform also alleges in Count V that National Marker has tortuously interfered with the Employment Agreements by intentionally encouraging and inducing the individual Defendants to breach their respective restrictive covenants.  (Doc. 62 ¶ 107).  Accuform specifically alleges that:

> [g]iven their positions at Accuform, Defendants Montgomery, Bloniarz, Donati, and Longo each had access to and knowledge of Accuform's confidential information, including information about its business operations, finances, business models, strategies, goals, past successes and failures, sales and solicitation history, and a wide range of customer information including contact information for key contacts, preferences, purchasing histories, contract terms, negotiations, pricing, discounts, rebates, and other valuable confidential information. Moreover, Defendants Montgomery, Bloniarz, Donati, and Longo all had access to Accuform's CRM database that included its customer lists, orders, sales histories, pricing, discounts, rebates, and notes on individual sales calls with current and prospective customers nationwide prepared by individual sales persons.

(*Id*. 62 ¶ 29).

Again, Accuform has the burden to demonstrate that such alleged information is considered a legitimate business interest. Generally, "when an employee has access to confidential business information crucial to the success of an employer's business, that employer has a strong interest in enforcing a covenant not to compete." *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231-32 (11th Cir. 2009).  However, Accuform must specify why their confidential business information is a legitimate business interest. *See Gould & Lamb, LLC v. D'Alusio*, 949 So. 2d 1212, 1214 (Fla. Dist. Ct. App. 2007) (employer's broad statements of concern to protect "marketing plans, product plans, business strategies, financial information, forecasts, and the like" insufficient to establish legitimate business interest); *See also Thyssenkrupp Elevator Corp. v. Hubbard*, Case No. 2:13-cv-202, 2013 WL 5929132, at

*5 (M.D. Fla. Nov, 4, 2013) (alleged "confidential information" that is readily accessible from other sources does not constitute a protectable legitimate business interest).

Here, the record is lacking as it pertains to the majority of Accuform's claimed confidential business information, such as the alleged "business operations, finances, business models, strategies, goals, past successes and failures, sales and solicitation history, and a wide range of customer information including contact information for key contacts, preferences, purchasing histories, contract terms, negotiations . . . other valuable confidential information." (Doc. 62 ¶ 29). The only alleged confidential information that is supported by record evidence is Accuform's specially negotiated pricing and rebates with certain customers. Through the declaration of Ogilbee (Doc. 41), Accuform has established that the information regarding specially negotiated pricing and rebates is a legitimate business interest because it is not readily available to the public. Specifically, Ogilbee states:

> [T]o avoid any doubt, these specially negotiated pricing and rebates are in fact *not disclosed and not are not publicly available*. Special discount and rebate programs are very different from MSRP pricing and are treated as confidential by Accuform in order preserve Accuform's favorable bargaining position when negotiating pricing and rebate terms.

(Doc. 41 ¶ 2). (emphasis added).

In *AutoNation, Inc. v. O'Brien*, the court found that AutoNation successfully demonstrated that their former employee had access to confidential and proprietary business information including: (1) AutoNation's Best Practices; (2) AutoNation's Peer Performance Reports; (3) information disclosed at AutoNation's Monthly Operating Review Meetings; and (4) information on AutoNation's Dealer Central Website. 347 F. Supp. 2d 1299 (S.D. Fla. Dec. 2, 2004). The Court held that AutoNation satisfied their burden of showing that such information was a legitimate business interest because AutoNation demonstrated and specified that each report, or information, contained detailed aspects of AutoNation's

16

dealership operations such as gross revenues, operating expenses, finance information, personnel summaries, upcoming advertising strategies and marketing plans, etc., all of which *were not publicly available*. *Id.* (emphasis added).  Here, the declaration of Ogilbee demonstrates that Defendant's had access to and knowledge of proprietary business information in terms of the negotiation of prices and special rebates. Additionally, the record establishes that numerous Accuform customers have informed Accuform that National Marker has targeted them and proposed alternative rebates designed to undercut Accuform's specially negotiated rebates and pricing. (Doc. 41 ¶ 4), which evidence creates a clear inference that Accuform's confidential information was disclosed to National Marker.  As such, Accuform has established a legitimate business interest in its specially negotiated pricing and rebates and demonstrated a substantial likelihood of success on the merits on its claims in Count IV and V.

### B.      Irreparable Harm

As a prerequisite to the entry of a preliminary injunction, the party seeking a preliminary injunction must also establish it will suffer irreparable harm unless the injunction issues.  *See Siegel*, 234 F.3d at 1176.  "Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper."  Indeed, irreparable harm is "the sine qua non of injunctive relief."  *Id.* (citations and quotation marks omitted).

In the context of a preliminary injunction, the asserted irreparable harm must be actual and imminent rather than remote or speculative. *Id.*  Economic losses alone will not justify entry of a preliminary injunction. *BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) (citation omitted).  Under Florida law, "the violation of an enforceable restrictive covenant creates a presumption of irreparable injury to

the person seeking enforcement of the restrictive covenant." Fla. Stat. Ann. § 542.335(1)(j). Further, "[w]here a defendant ex-employee solicits the plaintiff company's customers . . . irreparable injury is presumed." *North American Products Corp. v. Moore*, 196 F. Supp. 2d 1217, 1231 (M.D. Fla. Apr. 2, 2002). "The burden shifts to the party opposing enforcement to demonstrate that the restriction is overbroad, overlong, or otherwise not reasonably necessary to protect the interests of the party seeking enforcement. *North American Products Corp. v. Moore*, 196 F. Supp. 2d 1217, 1228 (M.D. Fla. Apr. 2, 2002). "[T]he purpose of Florida's rebuttable presumption of irreparable harm is to ensure that an employer, does not have to wait until it has been harmed by the loss of a specific customer in order to obtain an injunction." *Id.*

Here, the presumption of irreparable harm is appropriate and further, the Defendants have failed to demonstrate that the restrictive covenants are overbroad or are unnecessary to protect a legitimate business interest.  It must also be noted that the injunctive relief sought is limited only to restraining certain Defendants from contacting specifically identified customers, which represents a small percentage of Accuform's total customer base, (*See* Doc. S-79) and all Defendants from disclosing specifically identifiable confidential information.  As such, irreparable injury to Accuform is likely without restraint, and injunctive relief is warranted to prevent future harm to Accuform's reputation and substantial customer relationships.

### C.    Balance of Harm

A party seeking a preliminary injunction must further demonstrate that the threatened harm to it outweighs the harm a preliminary injunction may cause to the opposing party.  *Siegel*, 234 F.3d at 1176.  As the Eleventh Circuit cautions, courts should exercise great care before the entire case has been fully and fairly heard to assure that the power of the court to require or deter action does not result in unwarranted harm to the defendant or the public.  *Ala. v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1128 (11th Cir. 2005).  Here, Defendants will suffer

minimal harm, if any, from entry of a preliminary injunction as to paragraphs 2 and 4(e) of their Employment Agreements.  Significantly, the individual Defendants are not prohibited from working at National Marker in any capacity and are not prohibited from selling to other customers not identified in the record.  In contrast, Accuform will suffer harm to its' reputation and business relationships through violations of these specific restrictive covenants. Any harm posed to the Defendants is thus minimal in comparison to the adverse consequences that Accuform may suffer. Accordingly, the balance of harm weighs in favor of Accuform and supports the issuance of a preliminary injunction.

### D.    Public Interest

Finally, Accuform must demonstrate that the preliminary injunction would not disserve or be adverse to the public interest. *Siegel*, 234 F.3d at 1176.  In Florida:

> No court may refuse enforcement of an otherwise enforceable restrictive covenant on the ground that the contract violates public policy unless such public policy is articulated specifically by the court and the court finds that the specified public policy requirements substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint.

Fla. Stat. § 542.335(1)(i).  In other words, public policy favors the enforcement of valid restrictive covenants, and given the Court's findings regarding paragraphs 2 and 4(e) of the Employment Agreements, public policy must weigh in favor of the entry of a preliminary injunction.

### E.    Bond

A court may issue a preliminary injunction only if the movant provides security in an amount that the court considers appropriate to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. Fed. R. Civ. P. 65(c).  Courts maintain discretion to issue a preliminary injunction without requiring the movant to give security, however. *See BellSouth Telecomms., Inc.*, 425 F.3d at 971.  Here, as an initial matter, the Court

finds no need to issue a security in connection with the injunctive relief pursuant to Counts IV and V, as the restraint against the Defendants from using or disclosing Accuform's specially negotiated pricing and rebates in no way imposes a financial hardship upon the Defendants. However, the restraint against the Count II Defendants preventing them from contacting specific customers could result in a financial hardship. As such, in restrictive covenant cases, courts have discretion in requiring security, but when security is required it is most often connected to the amount of the salary the former employee would be prevented from obtaining. *See United Subcontractors, Inc. v. Godwin*, No. 11-81329-Civ, 2012 U.S. Dist. LEXIS 67061, at *40-42 (S.D. Fla. Feb. 3, 2012) (citing *CIENA Corp. v. Jarrard*, 203 F.3d 312, 322 (4th Cir. 2000); *Rathmann Group v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Pitney Bowes Inc., v. Acevedo*, 08-21808-CIV-Jordan, 2008 U.S. Dist. LEXIS 61194, at *17 (S.D. Fla. July 28, 2008)). The Defendants assert that bond should be connected to their compensation as follows: (1) Donati for $254,699.88; (2) Bloniarz for $268,200.12; (3) Montgomery for $204,450.12; and (4) Longo for $76,262.50.[8] The Court finds the Defendants requested amounts to be too broad. First, any bond associated with Donati is unnecessary given that he is not a Count II Defendant, and although the Count II Defendants argue that the recommended injunctive relief as to Count II will essentially make them unemployable at National Marker, there is record evidence to the contrary. The Count II Defendants would only be restricted from contacting 189 of Accuform's customers. The suggested restraint would in no other way prevent the Count II Defendants from working on other National Marker sales or working for National Marker on other non-sales matters. Accordingly, upon careful consideration, the Court finds the appropriate bond to be $275,000, which is approximately fifty percent of Montgomery, Bloniarz, and Longo's combined compensation (Bloniarz: $268,200.12 + Montgomery:

---

[8]Defendants also seek an additional amount of $250,000 to cover attorneys' fees.

$204,450.12 + Longo: $76,262.50 = $548,912.74 x .50 = $274,4546.37).  The Court finds that such an amount is a reasonable determination of the potential foreseeable damages to the Defendants, including attorney's fees, should they be found to have been wrongfully restrained. *See Parker Tampa Two, Inc. v. Somerset Dev. Corp.*, 544 So.2d 1018 (Fla.1989).

### IV.    Conclusion

As noted, a preliminary injunction is an extraordinary remedy to be used only when a moving party carries its burden as to the four prerequisites. *See Four Seasons*, 320 F.3d at 1210. Accuform has carried that burden in this instance regarding the restrictive covenants in paragraphs 2 and 4(e) of the Defendants' Employment Agreements. Accordingly, it is hereby RECOMMENDED that:

1. Accuform's Motion for Preliminary Injunction (Doc. 4) be GRANTED in part and DENIED in part to the extent that:

   a. Defendants Montgomery, Bloniarz, and Longo be enjoined for a period of eighteen-months anywhere within the geographic United States from directly or indirectly soliciting, diverting, taking away, or interfering with Accuform's customers identified in Doc. S-79, and

   b. All Defendants be enjoined from using and/or disclosing Accuform's specially negotiated pricing and rebates.

2. A bond in the amount of $275,000 be issued.

3.     The Court's preliminary injunction be held in full force and effect until further agreement of the parties or further order of the Court.

IT IS SO REPORTED in Tampa, Florida, this 13th day of January, 2020.

_____

ANTHONY E. PORCELLI
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.


cc:    Hon. Virginia M. Covington
        Counsel of Record