UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ACCUFORM MANUFACTURING, INC.

      Plaintiff,

v.                                CASE NO. 8:19-CV-02220-VMC-AEP

NATIONAL MARKER COMPANY,
BRADFORD MONTGOMERY, PETER
BLONIARZ, JOHN DONATI, and
REBECCA LONGO,

      Defendants.

_____/

**DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**A.**    <u>**Standard Of Review**</u>

District courts review de novo a report and recommendation on a motion for preliminary injunction. *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990); Fed. R. Civ. P. 72(b)(3). This is not an "appellate function," *Stephens v. Tolbert*, 471 F.3d 1173, 1176 (11th Cir. 2006), as a recommendation carries no "presumptive weight." *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). "The authority and the responsibility to make an informed, final determination . . . remains with the judge." *Id.* Unlike an appellate court, the district judge may receive new evidence and consider arguments not raised before the magistrate judge. *Stephens*, 471 F.3d at 1176 (no waiver of arguments by raising them for first time in objections to report and recommendation; Fed. R. Civ. P. 72(b)(3). The district judge "must look at *all* the evidence contained in the record," *Fredette v. BVP Mgmt. Associates*, 905 F. Supp. 1034, 1036 (M.D. Fla. 1995) (emphasis added), *rev'd on other grounds*, 112 F.3d

1503 (11th Cir. 1997), and render a decision "independent of the magistrate judge's report." *CarMax Auto Superstores, Inc. v. StarMax Fin., Inc.*, 192 F. Supp. 3d 1279, 1282 (M.D. Fla. 2016); *Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 513 (11th Cir. 1990). A party may cite new authorities in its objections. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 773 n.20 (7th Cir. 2010) ("[n]one of [appellee's] cases establish that a failure to cite cases works a waiver").

**B.      Legal Standard On Accuform's Motion For Preliminary Injunction**

"Because a preliminary injunction is 'an extraordinary and drastic remedy,' its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." *Siegel v. LePore*, 234 F.3d 1163, 1179 (11th Cir. 2000).  A court may only grant the injunctive relief if the movant proves the following factors: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Palmer* v. *Braun,* 287 F.3d 1325, 1329 (11th Cir. 2002).  If Accuform fails to carry its burden on even one of these four prerequisites, then a preliminary injunction cannot be granted, *United States v. Jefferson County,* 720 F.2d 1511, 1519 (11th Cir. 1983).

A request for preliminary injunction should not be granted if it requires the resolution of complex legal issues or factual issues that are not free from doubt.  *See, e.g. N. Am. Prods. Corp. v. Moore,* 196 F. Supp. 2d 1217, 1225 (M.D. Fla. 2002) ("the court normally cannot resolve material factual disputes in determining whether the moving party has established a likelihood of success on the merits"); *see also Madison Square Garden Corp. v. Braddock,* 90

F.2d 924, 927 (3d Cir. 1937) ("it has been well stated that, upon an application for a preliminary injunction, to doubt is to deny").

**C.**     **Objections**

**Objection No. 1: The Magistrate Judge Improperly Resolved Factual Disputes Concerning Whether Bloniarz, Donati, and Montgomery (The "Individual Defendants") Were Released From Their Restrictive Covenant Agreements ("RCAs").**

      **a.**      **The Report and Recommendation fails to address the fact that Accuform waived, or is estopped from enforcing, its rights under the RCAs because of the representations by Whitlock and Murphy.**

Accuform waived, or is estopped from enforcing, its rights under the restrictive covenant agreements ("RCAs") because two high-level human resources officials represented to Bloniarz, Donati, and Montgomery—on multiple occasions, both orally and in writing—that they were released from their RCAs. In early April of 2019, after Justrite Safety Group ("Justrite") acquired Accuform, Vicki Whitlock, a high-level human resources officer of Justrite, personally presented Separation Agreements to Bloniarz, Donati, and Montgomery as part of a round of layoffs and demotions.  [Bl. Dec., Doc. 30, ¶¶ H.1–H.8, H.15]; [Don. Dec., Doc. 31, ¶¶ H.1–H.10]; [Longo Dec., Doc. 32, ¶ E.5]; [Mont. Dec., Doc. 33, ¶¶ G.1–G.9]. Paragraph No. 10 reads: "This Agreement sets out the entire agreement between you and Accuform and supersedes any and all prior oral or written agreements or understandings between you and Accuform concerning your separation."  [Mont. Dec., Docs. 33-5, 33-6]; [Don. Dec., Doc. 31-4]; [Bl. Dec., Doc 30-2].  Montgomery asked Whitlock whether Paragraph No. 10 released him from his RCA and permitted him to work for competitors, including defendant National Marker Company ("National Marker").  [Mont. Dec., Doc. 33, ¶ G.5].  She answered that it did.  [*Id.*].  When Montgomery asked if she would put that in writing, she

responded, "How much clearer do you want Paragraph No. 10 to be?" [*Id.*].  Several days later, in an abundance of caution, Montgomery followed up with Whitlock via e-mail, stating, "I'm simply asking for clarification of what you've already verbally communicated with Ben in the room.  Am I correct in my interpretation of the ambiguous language on point 10?"[1]  [Mont. Dec., Doc. 33-6, ¶ 7, Ex. F].  Whitlock responded: "The language is clear that this agreement supersedes all other agreements."  [*Id.*].  Bloniarz had a similar conversation with Whitlock, testifying, among other things, "I asked [Whitlock] what the status of my restrictive covenants agreement was, and Ms. Whitlock said that I had none, directing my attention to Paragraph 10 of agreement." [Bl. Dec., Doc. 30, ¶¶ H.4–H.7]. These record facts are undisputed.

Montgomery, Bloniarz, and Donati also separately discussed Paragraph No. 10 with John Murphy ("Murphy"), Accuform's VP of Administration, who had oversight over Accuform's Human Resources Department.  [Mont. Dec., Doc. 33, ¶ G.6]; [Bl. Dec., Doc. 30, ¶¶ H.12–H.14]; [Don. Dec., Doc. 31, ¶ H.8].  Montgomery showed or read Paragraph No. 10 aloud to Murphy and asked Murphy what he thought of it.  [Mont. Dec., Doc. 33, ¶ G.6].  Murphy stated that it released Montgomery from his RCA and said that Montgomery could work for anyone he wanted, including National Marker.  [*Id.*].  Bloniarz and Donati had similar conversations with Murphy.  [Bl. Dec., Doc. 30, ¶ H.12–H.14]; [Don. Dec., Doc. 31, ¶ H.8].  These facts, too, are undisputed.  Thereafter, Bloniarz, Donati, and Montgomery, in reliance on Paragraph 10 of the Separation Agreements and their conversations with Whitlock and

---

[1] Montgomery was referring to Ben Wilbert, VP of Marketing for Justrite, who also was in the room.  [Mont. Dec., Doc. 33, ¶ G.4].

Murphy, signed the Separation Agreements. [Bl. Dec., Doc. 30, ¶ H.15]; [Don. Dec., Doc. 31, ¶ H.10]; [Mont. Dec., Doc. 33, ¶ G.9].

Where an employer either intentionally or unintentionally misleads its departing employees into believing that it will not enforce post-employment restrictive covenants, and the employees accept new employment in reliance on those representations, the employer cannot thereafter assert such covenants. *See Ikon Office Sols., Inc. v. Am. Office Prods., Inc.*, 178 F. Supp. 2d 1154, 1161-64 (D. Or. 2001), *aff'd*, 2003 U.S. App. LEXIS 6621 (9th Cir., Apr. 4, 2003).

In *Ikon*, the court found the employer waived, and was estopped from enforcing, the defendants' noncompetition agreements where the employer's HR representative, upon the defendants' separation from employment, mistakenly represented to them that none existed. The court "ha[d] little difficulty concluding that," "[h]aving induced defendants to believe that [the employees] were not bound by non-competition agreements, [plaintiff] cannot now deny its own representations in order to recover damages for a largely self-inflicted wound." *Id.* at 1164. In the instant case, Accuform similarly misled Bloniarz, Montgomery, and Donati into believing that their Separation Agreements extinguished their RCAs. Accuform cannot now be heard to complain that the RCAs have been breached.

The Report and Recommendation gave no weight whatsoever to the undisputed[2] representations by Accuform that the Separation Agreements released Bloniarz, Donati and Montgomery from their RCAs. It mistakenly interpreted defendants' position as contending,

---

[2] Over the course of nearly five months, Accuform has filed four declarations in support of its motion for preliminary injunction. [Docs. 41, 70-1, 70-2, 74]. None of them are authored by Whitlock or Murphy. Despite ample opportunity to do so, Accuform has put forth no evidence suggesting that the Individual Defendants' accounts of their conversations with these officials are untruthful or otherwise inaccurate.

in part, that "Whitlock's oral representations are a *modification* of the Employment Agreements . . . ." [Doc. 89 at 8] (emphasis added).  Defendants have never claimed that Whitlock's or Murphy's representations modified the RCAs.  Instead, defendants asserted that Whitlock's and Murphy's representations either constitute a waiver or estoppel or, alternatively, clarify an ambiguity in Paragraph 10 (discussed below).  The Report and Recommendation conflates the legal analyses of these defenses.

For example, the Report and Recommendation disregarded Whitlock's e-mail because it "does not qualify as any new consideration." [Doc. 89 at 8] (emphasis added).  Even if that were true, it is legally irrelevant.  Consideration is not an element of estoppel.  *Crown Life Ins. Co. v. McBride*, 517 So.2d 660, 663 (Fla. 1987) ("[p]roof of detrimental reliance . . . suppl[ies] the missing element of consideration" for estoppel).  Nor is it an element of waiver.  Waiver "can be established through express language or implied by conduct that clearly leads a party to believe that a right has been waived." *MDS (Canada), Inc. v. Rad Source Techs., Inc.*, 822 F. Supp. 2d 1263, 1311 (S.D. Fla. 2011).  Even where some courts have suggested that the waiver of a contractual right must be supported by consideration, those courts also recognize that consideration "may be inferred from conduct" where, as here, "a party to the contract is put off guard and lead to believe, to his detriment, that a right has been waived." *McNeal v. Marco Bay Assocs.*, 492 So.2d 778, 781 (Fla. 2d DCA 1986).

The Report and Recommendation also failed to give any weight to the representations by Whitlock and Murphy because of Paragraph No. 5 of the RCAs, which provides that "[a] waiver or amendment of this Agreement or any provision of it, will be valid and effective only if it is in writing and signed by both parties or the party waiving such provision." [Doc. 89 at

8] (quoting [Doc. 33-1, ¶5]). As an initial point, this clause does not address estoppel, only waiver. Therefore, the paragraph does not by its terms preclude the assertion of estoppel, regardless of whether the basis for the estoppel is set forth in a signed writing.

More importantly, under Florida law, contracts may be waived by subsequent oral agreement, dealings, or conduct, "*even though the written contract purports to prohibit such modification.*" *Pan Am. Eng'g Co., Inc. v. Poncho's Const. Co.*, 387 So. 2d 1052, 1053 (Fla. 5th DCA 1980) (emphasis added) (collecting cases). Such a waiver occurs where it "would work a fraud on either party" if the court were to refuse to give effect to the parties' oral statements. *Prof'l Ins. Corp. v. Cahill*, 90 So. 2d 916 (Fla. 1956); *Pan Am. Eng'g Co., Inc.*, 387 So. 2d at 1053. A waiver will also occur where there is detrimental reliance on the oral statements. *Canada v. Allstate Ins. Co.*, 411 F.2d 517, 519–20 (5th Cir. 1969) ("Florida law, however, goes even further [than other states] and allows an oral modification of a written contract under circumstances of detrimental reliance even though the contract contains a provision prohibiting its alteration except in writing."). A reasonable jury could easily find that Accuform cannot be allowed to accept the benefits of the Separation Agreements after having made false statements about the agreements to Bloniarz, Montgomery, and Donati.

More fundamentally, a reasonable jury could find that the e-mails between Montgomery and Whitlock qualify as a signed writing under Paragraph No. 5, given the signature blocks affixed to the exchange. *See, e.g. McGuire v. Adex Corp.*, 2017 WL 1422426, at *3 (M.D. Fla. Apr. 19, 2017) ("[u]nder Florida law, therefore, the emails collectively constituted a written instrument duly executed . . . since [the parties'] names are typed in the email exchange, [and] logically associated with the email exchange") (collecting cases).

The Report and Recommendation overlooks this precedent and states that "the e-mail correspondence would not constitute a written waiver because the language in the e-mail is vague and lacks any mention of the material terms of the original Employment Agreements." [Doc. 89 at 8]. That is inaccurate. The e-mail expressly references Paragraph 10. [Doc. 33-6] (Q: "I'm simply asking for clarification of what you've already verbally communicated . . . . Am I correct in my interpretation of the ambiguous language *on point 10*?" A: The language is clear in that this agreement supersedes all other agreements." (emphasis added)). In any event, the issue is not whether the e-mail is vague, but whether all of Whitlock's and Murphy's representations and conduct with the Individual Defendants, taken together, including the e-mail, are vague, because "[w]aiver can be established through express language or implied by conduct that clearly leads a party to believe that a right has been waived." *MDS (Canada), Inc.*, 822 F. Supp. at 1311.

Even if the e-mail were vague, it would not negate the Individual Defendants' estoppel defense. Estoppel does not require unequivocal statements by the party against whom the defense is asserted. Under Florida law, "[a]n express representation is not necessary for estoppel; it is enough that a representation is implied, either from acts, silence, or other conduct." *Id.* at 1312.

### b.  There is a significant dispute as to whether the separation agreements supersede and extinguish the RCAs.

Regardless of whether Whitlock's and Murphy's statements give rise to a waiver or estoppel, Paragraph No. 10 of the Separation Agreements superseded and extinguished the RCAs by operation of contract law. The Report and Recommendation disagreed, concluding the Separation Agreements did not supersede the RCAs because "the Separation Agreements

are only in reference to the *separation* of the Defendants' employment, and not in any way a reference to the prior [RCA]s, and more specifically, to any of the post-employment restrictive covenants."  [*Id.*] (emphasis added).  Because the Report and Recommendation gave no weight whatsoever to the undisputed representations by Whitlock and Murphy regarding the effect of Paragraph 10, the Report and Recommendation necessarily concluded that Paragraph No. 10 is unambiguous as a matter of law.  That conclusion is erroneous.

"Under Florida law, four elements are required to effectuate the novation of a binding contract: (1) a previously valid contract; (2) agreement of the parties to cancel that contract; (3) a new valid and binding contract; (4) agreement of the parties that the new contract will replace and extinguish the old one."  *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1237 (11th Cir. 2008) (citations omitted).  "Intent may be inferred from the totality of the circumstances surrounding the transaction," and, most importantly, "*[t]he question of intent 'is generally a question of fact'* for a jury," unless "the terms of a written agreement are not in doubt. . . ."  *Id.* (emphasis added).

"Language in a document is ambiguous when its provisions are fairly susceptible to more than one interpretation." *Bendo v. Silver Woods Cmty. Ass'n*, 159 So. 3d 179, 180 (Fla. 5th DCA 2015). The fact that one party's interpretation may be more plausible to a court is irrelevant; it is enough that both interpretations have "a degree of merit." *Am. Quick Sign, Inc. v. Reinhardt*, 899 So. 2d 461, 465 (Fla. 5th DCA 2005) (Each [party's position] seems to us a reasonable and plausible interpretation of the deed provisions. For this reason alone, the provisions are ambiguous and extrinsic evidence is necessary to determine their meaning."); *Stewart v. KHD Deutz of Am. Corp.*, 980 F.2d 698, 704 (11th Cir. 1993) ("We need not decide

which interpretation is more plausible. That both are reasonable is sufficient to establish that the contract is ambiguous and that the trial court should have considered extrinsic evidence.").

It is at least ambiguous whether the RCAs "concern" post-separation conduct under Paragraph No. 10 because their express purpose was to prohibit the Individual Defendants from engaging in certain conduct *after their separation,* such as competing against Accuform.  The Report and Recommendation did not address the authority defendants cited on this issue— *PatientPoint Network Sols., LLC v. Contextmedia, Inc.*, 2014 U.S. Dist. LEXIS 37443 (S.D. Ohio Mar. 21, 2014).  In *PatientPoint*, the court concluded that a former employer failed to demonstrate a likelihood success on the merits of its breach of restrictive covenants claims against its former employee where the parties had executed a "Separation Agreement" that:

> contained an express clause, under the heading "Entire Agreement," stating that the "[a]greement contains all the understandings and representations between the Employee and Employer pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter."

*Id.* at *7.  Like the instant case, the separation agreement in *PatientPoint* did not mention restrictive covenants expressly or by implication.  It related only to severance compensation and the release of claims.  Despite that fact, the court reasoned:

> the phrase "pertaining to the subject matter hereof[,]" set forth in the Separation Agreement, is, at the least, ambiguous.  ***One could reasonably conclude that the "subject matter" of the Separation Agreement is the broad subject of [defendant's] separation from employment with [plaintiff]. Certainly, the previous non-compete agreement pertained, in part, to [defendant's] separation by governing his ability to compete with [plaintiff] for twelve months following his separation.***

*Id.* at *25, n.2; *accord Comput. Scis. Corp. v. Maguire*, 2016 U.S. Dist. LEXIS 168791, at *18, *19 (E.D. Va. Dec. 6, 2016) (adopting predecessor court's ruling that separation agreement's

forum selection clause governed litigation under employee's earlier noncompete agreement because separation agreement "provided that the Agreement superseded all other prior written agreements between the parties," and "[t]he subject matter of the [Separation Agreement] was the resolution of 'all issues and obligations that exist or may exist between [plaintiff and defendant] concerning [defendant's] employment and termination,'" which necessarily included "those based on the non-solicitation/non-competition agreements").

Simply put, one cannot reasonably conclude that language such as Paragraph No. 10— "prior oral or written agreements or understandings between you and Accuform concerning your separation"—is unambiguous as a matter of law where courts have reached conflicting conclusions as to its meaning. *See Ace Am. Ins. Co. v. Wattles Co.*, 930 F.3d 1240, 1252 (11th Cir. 2019) ("One important indicator of ambiguity in a[n] [insurance] policy is whether nearly identical or similar language has been construed differently by other courts." (internal citations omitted)). Because Paragraph No. 10 is, at the very least, ambiguous, Florida law requires that it be interpreted with reference to the representations made by Whitlock and Murphy to the Individual Defendants.  This, the Report and Recommendation failed to do.  Because a reasonable jury could conclude that the parties intended Paragraph No. 10 to supersede the RCAs, Accuform has not carried its burden to show it is likely to succeed on the merits.

      **c.**    **The representations by Whitlock and Murphy preclude Accuform from demonstrating that the RCAs are necessary to protect its legitimate business interests.**

Even if the statements by Whitlock and Murphy do not clarify an ambiguity or create an issue regarding waiver or estoppel, there is a significant factual dispute as to whether they

preclude Accuform from proving, as it must under Section 542.335, *Florida Statutes*, that the RCAs are reasonably necessary to protect its legitimate business interests.

To enforce the RCAs, Accuform has the burden to "plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant[s]." § 542.335(1)(b), *Fla. Stat.* (2019). Once Accuform has shown it has a legitimate business interest, Accuform also must prove "that the contractual restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction." *Id.*, § 542.335(1)(c).

Here, a reasonable jury could find that if the RCAs were necessary to protect Accuform's customer relationships or information, Whitlock and Murphy would <u>not</u> have represented that the Individual Defendants were released from them. *See Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 181 (S.D.N.Y. 2006) (former employer could not show that enforcement of its restrictive covenant agreements for their full twelve-month term was reasonably necessary to protect its legitimate business interests where former employer had initially offered to reduce the length of the defendant's noncompetition agreement to four months; court found former employer's "offer of four months reflects a recognition on its part that four months would be sufficient to protect its interests"). This conclusion applies equally to Longo, whose RCA is identical in all material respects to the RCAs of the other Individual Defendants.[3]

---

[3] The fact that Accuform entered into Separation Agreements releasing Bloniarz, Donati, and Montgomery from their RCAs, and the fact that Accuform made oral representations to that effect, precludes a finding that enforcement of Longo's RCA, too, is necessary to protect Accuform's legitimate business interests.

**Objection No. 2**: **The Report and Recommendation Failed To Give Weight To The Undisputed Fact That Accuform Does Not Impose Restrictive Covenants On Its Independent Sales Agents, Although They Have The Same Customer Relationships And Access To Allegedly Confidential Pricing And Rebate Information As Bloniarz And Donati.**

The undisputed record evidence is that Accuform does not require its independent sales representatives to enter into restrictive covenant agreements, although these individuals perform the same job duties as Regional Sales Managers like Donati and Bloniarz and have access to the same company information and customers.  [Bl. & Don. Decs., Docs. 30 and 31, ¶¶ G.1–G.5]; [Bl. Counter-dec., Doc. 47, ¶¶ 5-12].  These representatives were employed by an independent sales agency known as JDF or Clark and Associates, which had a contract to sell Accuform's products. [*Id.*].

This evidence precludes a conclusion that Accuform likely to succeed on the merits because it suggests that enforcement of the RCAs is not necessary to protect Accuform's business interests.  *See* Section 542.335(1)(c), *Florida Statutes* (2019); *Estee Lauder Cos*, 430 F. Supp. 2d at 181 (not necessary to enforce noncompetition agreement for its full twelve-month term where "similar covenants not to compete ha[d] not been enforced against other members of [the former employer] for twelve full months").  In addition, the fact that Accuform permits its independent sales agents to accept employment with its competitors and sell competing products to its customers seriously undermines its argument that it will suffer irreparable injury if the Court does not prohibit the Individual Defendants from engaging in the same conduct.

In addition, the fact that Accuform does not impose restrictive covenants on JDF representatives supports the conclusion that Accuform has waived, or is estopped from

enforcing, the RCAs against the Individual Defendants. *See Surgidev Corp. v. Eye Tech., Inc.*, 648 F. Supp. 661, 698 (D. Minn. 1986), *aff'd*, 828 F.2d 452 (8th Cir. 1987) (former employer waived, or was estopped from enforcing, its restrictive covenant agreements where "the evidence overwhelmingly establish[ed] that [the former employer] has permitted its employees, including key sales and marketing personnel, to leave Surgidev and to take employment with competitor companies," and in one instance the former employer told a former employee that "when he left . . . he was free to work for another [competing] company.").

On December 11, 2019, after the deadline for evidentiary submissions[4], Accuform produced in discovery the following "attorneys-eyes-only" documents: (1) a description of Bloniarz's and Donati's former job duties (Accuform-0000479-0000481); (2) a map showing that the sales territories of JDF and Clark and Associates were coextensive with those of Bloniarz and Donati (*id.* at 0000484); and (3) Accuform's agreements with JDF and Clark and Associates (*id.* at 0000495-526), which show that the agents' job duties were materially identical to Bloniarz's and Donati's. Defendants request leave to file these documents under seal for the Court's consideration in ruling on these Objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Roberts v. Bell*, 281 F. Supp. 3d 1074 (D. Mont. 2018) (considering new declarations regarding how photos of daughter's deceased mother shocked daughter and minor children).

---

[4] Fed. R. Civ. P. 6(c)(2); Local Rule 4.06(a)(3).

**Objection No. 3**: **The Report and Recommendation Applied The Wrong Legal Standard In Concluding Accuform's Customer Relationships Are Substantial, And The Report and Recommendation Gave No Weight To Conflicting Evidence On That Issue.**

      a.      **Accuform has not demonstrated that it is likely to show at trial that it enjoys substantial relationships with its customers.**

The Report and Recommendation found that Accuform has substantial relationships with the customers identified on its Restricted Customer Lists ("Customer Lists" or "Lists") solely because of Accuform's high sales volume with those customers. [Doc. 89 at 10, 11]. However, sales volume alone is not the applicable legal standard. Every successful business will have high-volume customers, but many businesses do not have substantial relationships entitled to protection under Section 542.335.

Whether a customer relationship qualifies as "substantial" under Section 542.335, *Florida Statutes*, is evaluated with reference to the following factors: (1) whether the plaintiff's relationship with the customer is exclusive, (2) whether the customer "cannot be easily identified by other competitors in the industry," (3) whether "there is active, on-going business being conducted," and (4) whether there is "an expectation of continued business." *Osborne Associates, Inc. v. Cangemi,* 2017 WL 5443146 (M.D. Fla. Nov. 11, 2017) (*quoting IDMWORKS, LLC v. Pophaly*, 192 F. Supp. 3d 1335, 1340–41 (S.D. Fla. 2016); *accord Shields v. Paving Stone Co., Inc.*, 796 So.2d 1267, 1268–69 (Fla. 4th DCA 2001). The Report and Recommendation does not address any of these factors. Consideration of all of them mitigates against the conclusion that Accuform has shown a likelihood of success in carrying its burden of demonstrating that it has substantial customer relationships.

As to the first factor, it is undisputed that Accuform's customer relationships are not exclusive. The parties share at least ninety percent of their customers. [Docs. 30, 31, 32, and

33 at ¶ B.1].  Since joining National Marker, neither Bloniarz nor Donati have made sales to any customer who was not already a customer of National Marker before they arrived.  [Longo Dec., Doc. 32, ¶ G.2]; [Don. Dec., Doc. 31, ¶ J.1]; [Bl. Dec., Doc. 30, ¶ I.5].  In fact, at least forty-four of the customers on Accuform's Customer Lists are primarily customers of National Marker or Brady[5], not Accuform.  "Florida law is clear that a non-compete agreement ***cannot*** prevent a former employee from doing business with customers of the former employer where the employer did not have exclusive relationships with its customers."  *See Dardis v. Profloors, Inc.*, 2016 Fla. Cir. LEXIS 37424, *6-7 (Fla. 20th Jud. Cir. Ct. Sept. 26, 2016) (emphasis added) (collecting cases).

The second factor also mitigates against the conclusion set forth in the Report and Recommendation.  The record evidence demonstrated that the identities of Accuform's customers and key contact personnel are readily obtainable by searching the internet.  [Don. Dec., Doc. 31, ¶¶ B.1-B.4, Doc. 33-1]; [Bl., Longo, and Mont. Decs., Docs. 30, 31, and 32 at ¶¶ B.2, B.3].  In fact, Magistrate Judge found no record evidence that the identities of Accuform's customers are confidential and denied enforcement to the RCAs to the extent they purport to prohibit disclosing the identities of Accuform's customers.  [Doc. 89 at 16].

As for the third and fourth factors, there are substantial factual disputes regarding whether Accuform has an active, ongoing relationship with its customers or an expectation of continued business.  Accuform and National Marker manufacture and sell safety signs, like "Caution Wet Floor" placards.  [Docs. 30, 31, 32, and 33, ¶ A.2].  Their products are not unique

---

[5] [Doc. 85, ¶ 9; Doc. 85-1, Customer Nos. 16, 29, 32, 49, 58, 62, 78; Doc. 86, ¶ 14; Doc. 86-1, Customer Nos. 1, 2, 5, 7, 8, 15, 16, 17, 20, 26, 27, 28, 29, 33, 35, 38, 39, 40, 42, 48, 53, 55, 56, 57, 58, 59, 62, 64, 69, 73, 77, 86, 87, 90, 93, 96, 97].  Brady is a signage supplier that competes with Accuform and National Marker.

or technologically sophisticated, nor can they be differentiated in any meaningful way, so customers exhibit no brand loyalty and make purchasing decisions primarily, if not exclusively, on the basis of price and shipping speed.  [Don. & Bl. Decs., Docs. 30 and 31, ¶¶ J.3–J.7]; [Longo Dec., Doc. 32, ¶¶ G.12–G.20]; [Mont. Dec., Doc. 33, ¶¶ D.1–D.11, K.2–K.5].

Moreover, Bloniarz's and Donati's relationships with Accuform's customer representatives were sporadic and fleeting.  The annual turnover rate among distributor representatives was about 25% during Bloniarz's and Donati's employment.  [Docs. 30 & 31, ¶ E.3].  This means that every year, nearly 200 of Bloniarz's and Donati's meetings were first-time encounters. [Docs. 30 & 31, ¶¶ E.3, E.4].

Under these circumstances, relationships with customers could not possibly give former employees an unfair business opportunity, and there is no guarantee of continued business. Florida courts routinely deny enforcement to non-solicitation provisions on facts such as these.  *See Anich Indus., Inc. v. Raney*, 751 So.2d 767, 768, 771 (Fla. 5th DCA 2000) (denying injunctive relief where defendant formerly worked as salesman for plaintiff which sold industrial tools and equipment, and defendant presented evidence that customers "made their industrial tool and equipment purchases based primarily on cost and the supplier's ability to provide the goods quickly," finding "little evidence of any exclusive or other kind of relationship that could be construed as 'substantial' within the meaning of the statute"); *Shields*, 796 So.2d at 1269 (non-solicitation clause unenforceable to prohibit defendant from working for customers obtained through open bidding process, where customers simply choose the lowest-priced provider).

Another factor undermining substantial customer relationships is that Accuform's relationships are with distributors, while it is the end-users that make the actual purchasing decisions. Bloniarz's and Donati's job duties illustrate this point. Their work for Accuform primarily included three responsibilities: (1) attending trade shows; (2) meeting with distributors to discuss Accuform's products; and (3) visiting end-user sites in need of signage, such as slaughterhouses and bottling plants, to arrange a sale for a distributor. [Bl. Dec., Doc. 30, ¶¶ E.4-E.15]; [Don. Dec., Doc. 31, ¶¶ E.4-E.13]. Only the third activity resulted in sales, and those sales flowed from Accuform to the distributor to the end-user. [Bl. Dec., Doc. 30, ¶¶ E.8-E.12]; [Don. Dec., Doc. 31, ¶¶ E.8-E.12]. Bloniarz and Donati were nothing more than matchmakers between distributors and end-users; their jobs were to promote demand for Accuform's products. [Don. and Bl. Decs., Docs. 30 and 31, ¶¶ D.1, E.1–E.12].

Further distancing Accuform from the ultimate customer is the fact that many of Accuform's relationships with distributors are managed primarily by independent sales agencies that contract with Accuform, such as JDF and Clark & Associates, rather than by Accuform itself. [Doc. 85, ¶ 8; 86] (identifying customer nos. 4, 6-9, 13, 20, 22, 24, 26, 32, 44, 48, 49, 58, 62, 79, 87, 90, 91, and 95 as managed primarily by JDF); [Doc. 87, ¶ 11] . Where there are "layers" of entities between a company and the ultimate customer, it militates against finding a substantial customer relationship. *IDMWORKS, LLC*, 192 F. Supp. 3d at 1341.

Finally, Bloniarz testified that several of the customers on his List stopped purchasing from Accuform before his separation from employment. [Docs. 85 at ¶ 11; 85-1] (nos. 12, 16, and 47). Six of the customers on the Lists no longer exist due to mergers or acquisitions, [Mont. Dec., Doc. 86, ¶ 11; Doc. 86-1, Customer Nos. 38, 100]; [Bl. Dec., Docs. 85, ¶ 4; Doc. 85-1,

Customer Nos. 30, 85]; [Don. Dec., Doc. 87, ¶ 4; Doc. 87-1, Customer Nos. 27, 39], at least two of which are undisputed. [Doc. 74, ¶ 7(b), (c)]. Rob Ogilbee, Accuform's president, even admitted that two of the customers on the Lists made no purchases from Accuform in the first quarter of 2019. [*Id.*, ¶ 7(d), (f)]. "A company cannot successfully claim a protectable business interest in a relationship with a former customer." *IDMWORKS, LLC*, 192 F. Supp. 3d at 1341.

      **b.**    **The Report and Recommendation improperly prohibits Bloniarz and Montgomery from soliciting customers with whom they rarely or never interacted during their employment with Accuform and prohibits Longo from soliciting customers with whom her interactions were menial.**

The Report and Recommendation concluded that Bloniarz and Montgomery should be prohibited from soliciting customers as to whom the Individual Defendants had minimal interactions and no specialized knowledge. The Individual Defendants did not even recognize 45 of the names on Accuform's Customer Lists.[6] As to an additional 83 customers, the Individual Defendants had no interactions whatsoever with the customer during the last several years or more of employment with Accuform.[7] The Individual Defendants interacted with an additional 76 customers less than once or twice a year.[8] Other reasons their customer relationships were not substantial include: (1) Accuform had low sales to the customer; (2) the customer was a "house account," meaning the relationship was managed directly by corporate leadership on both sides, rather than salespeople like Bloniarz or Donati; or (3) the customer was not in Bloniarz's or Donati's territories during their last two years or more with Accuform. [Docs. 85, 85-1, 86, 86-1, 87, 87-1].

---

[6] [Bl. Dec., Doc. 85-1]] (21 customers); [Don. Dec., Doc. 87-1] (20 customers); [Mont. Dec., Doc. 86-1] (4 customers).
[7] [Bl. Dec., Doc. 85-1,] (28 customers); [Don. Dec., 87-1] (20 customers); [Mont. Dec., 86-1] (35 customers).
[8] [Bl. Dec., Doc. 85-1], (19 customers); [Don. Dec., Doc. 87-1] (14 customers); [Mont. Dec., Doc. 86-1] (53 customers).

Montgomery had minimal or no interactions with almost every customer on his List, since he was not a salesperson, did not make sales calls, and was not assigned to any particular territory.  [Mont. Decs., Doc. 33, ¶¶ C.4–E.5; Doc. 86, ¶¶ 4-9].  He worked in marketing, overseeing e-mail/mass advertising campaigns and social media announcements.  Mont. Decs., Doc. 33, ¶ C.5; Doc. 86, ¶¶ 4-9]. He directly encountered customers only when serving in a secretarial role at meetings or when he was performing mundane tasks, such as greeting passersby, at industry events.  [Mont. Decs, Doc. 33, ¶¶ C.4–E.5; Doc. 86, ¶¶ 4-9].

Longo worked as an order taker, analogous to a call-center customer service representative. [Longo Dec., Doc. 32, ¶¶ C.1-C.11]. She had no meaningful relationships with customers or any access to confidential information. [*Id.*, ¶¶ C.1-D.13].

Accuform also included, in the Customer Lists of Bloniarz and Montgomery, four "buying groups."  [Doc. 70-1, ¶¶ 8].  The only support for the contention that Bloniarz had relationships with these groups is the assertion by Rob Ogilbee, Accuform's president, that Bloniarz was "intimately involved with" the buying groups.  [*Id.*].  Such a conclusory allegation is not sufficient to satisfy Accuform's burden.  *See, e.g. Ne. Fla. Chapter of Ass'n of Gen. Contractors v. Jacksonville*, 896 F.2d 1283, 1286 (11th Cir. 1990) (conclusory allegations insufficient to support entry of preliminary injunction).  Montgomery, for his part, sharply disputes that he had relationships with buying groups, [Mont. Decs., Doc. 33, ¶ F.9; Doc. 48, ¶¶ 3-12], and there is no legal basis upon which to discredit his testimony. *See* discussion *infra* at 23, 24.

The Report and Recommendation disregards the foregoing record facts, stating, "Although the relationships between the individual Defendants and any particular customer

may be relevant, here, the Court is primarily focused on the relationship between Accuform and its customers."   [Doc. 89 at 11].   In support of this approach, the Report and Recommendation cites *Milner Voice and Data Inc. v. Tassy*, 377 F. Supp. 2d 1209, 1218 (S.D. Fla. June 21, 2006) for the proposition that "the proper inquiry focuses on the relationship between an **employer** and its prospective and existing customers and an employer need not prove that its former **employee** himself had a substantial relationship with any particular customer."[9] [Doc. 89 at 11] (emphases added).

This analysis overlooks a critical step in the analysis required by Section 542.335, *Florida Statutes*.  Even if it were true that the relationships relevant to this case are those between Accuform and its customers (rather than those between the Individual Defendants and the customers), and even if it were true that Accuform has carried its burden to show that those customer relationships are "substantial," Accuform is still required to prove that the non-solicitation provision is reasonably necessary to protect those customer relationships, as required by Section 542.335(1)(c), *Florida Statutes*  ("[a] person seeking enforcement of a restrictive covenant also shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction").

To the extent that the Individual Defendants had minimal or menial interactions with, and limited knowledge of, Accuform's customers, then Accuform has no need for the non-solicitation provision because the Individual Defendants are on equal footing with employees in clerical positions or even individuals who have never worked for Accuform.  *See Deloitte*

---

[9] Some subsequent cases also recite this same proposition, but they all ultimately cite to *Milner*.

*& Touche U.S.A. LLP v. Lamela*, 2005 Del. Ch. LEXIS 164 (Ch. Oct. 21, 2005) (applying Florida law) (no basis to prohibit defendant from soliciting clients to whom she had not billed time during her prior employment with plaintiff "because [the defendant] did not gain any knowledge with respect to those clients with which he could engage in unfair competition," and "[t]hus, . . . [the plaintiff] does not have a legitimate business interest that this Court needs to protect, as [the defendant] is on equal footing, competitively, with individuals who never worked at [the defendant]"); *see also Larweth v. Magellan Health, Inc.*, 398 F. Supp. 3d 1281, 1291 (M.D. Fla. 2019) (non-solicitation provision was reasonable because it was "very narrowly tailored to only prohibit solicitation of those customers that [the defendant] actually had contact with or knowledge of due to his employment with [the plaintiff]").

To the extent *Milner* can be read to hold otherwise, it contradicts the plain language of Section 542.335, and is called into question by subsequent Florida Supreme Court precedent. The Florida Supreme Court has defined "legitimate business interest" as follows:

> [A] "legitimate business interest" is an identifiable business asset that . . . if [it] were misappropriated by a competitor (i.e., taken without compensation), its use in competition against its former owner would be "unfair competition." Put another way, a "legitimate business interest" is *a business asset that, if misappropriated, would give its new owner an unfair competitive advantage over its former owner.*

*White*, 226 So.3d at 784-85 (emphasis in original).  In the instant case, as in *Deloitte*, Accuform can have no legitimate business interest in customer relationships where the Individual Defendants have no unfair competitive advantage in soliciting those customers.

Eleventh Circuit case law supports this interpretation of the statute.  In *Proudfoot Consulting Co. v. Gordon*, the district court stated that "[t]he relevant relationship for evaluating whether a legitimate business interest exists is the relationship between the former

employer and the customer," not the former employee and the customer.  2008 WL 11333230, at *20 (S.D. Fla. Apr. 15, 2008) (*quoting Milner*, 377 F. Supp. 2d at 1218).  While the Eleventh Circuit affirmed, on alternative grounds, it expressly noted: "We . . . have doubts about whether [plaintiff]'s interest in its substantial client relationships would justify the competitor non-compete clause.  *[Plaintiff]'s legitimate business interests in its client relationships includes the relationships **[defendant] established** with [plaintiff's] clients as well as the client-specific confidential information **known to [defendant]**.*"  *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1233 n.9 (11th Cir. 2009) (emphases added).

**Objection No. 4: The Report and Recommendation Concluded That Accuform Is Likely To Prove That Its Pricing And Rebate Structure Is Confidential Despite Conflicting Record Evidence.**

The Report and Recommendation concludes that Accuform is likely to prove that its pricing and rebate structure are confidential [Doc. 89 at 16, 17], although the parties submitted squarely contradictory declarations on this issue.  Defendants' declarations were detailed, internally consistent, and probative[10], particularly Montgomery's October 24th counter-declaration, which directly refutes the evidence on which the Report and Recommendation relied.[11]  In ruling on a motion for preliminary injunction, there is no legal basis upon which to credit the evidence submitted by one party over the other, and the Report and Recommendation offers none.  The evidence on this issue is, at best, in equipoise, which precludes the conclusion that Accuform is likely to succeed on this issue.

---

[10] [Mont. Dec., Doc. 33, ¶¶ B.2–B.5, C.14, C.18, C.27, D.1, D.3–D.11, F.1–F.9; Docs, 33-1, 33-2, 33-3 ]; [Bl. Dec., Doc. 30, ¶¶ B.1–B.5, E.2, E.13, E.14, F.1–F.14, J.1, J.2, J.8–J.14]; [Don. Dec., Doc. 31, ¶¶ B.1–B.6, E.2, F.1–F.14, J.1, J.2, J.7–J.14]; [Longo Dec., Doc. 32, ¶ B.1–B.4, D.1–D.13, G.9–G.11, G21–G.25].
[11] [Mont. Supp. Counter-Dec., Doc. 48, ¶¶ 2, 3, 4, 6, 9, 10, 11, 12, 13].

On a motion for preliminary injunction, a plaintiff must come forward with evidence so compelling that it leaves the material facts virtually undisputed. *See, e.g. N. Am. Prods. Corp. v. Moore*, 196 F. Supp. 2d 1217, 1225 (M.D. Fla. 2002) ("the Court normally cannot resolve material factual disputes in determining whether the moving party has established a likelihood of success on the merits"); *Sandy's Café, LLC v. Santiago*, 2018 U.S. Dist. LEXIS 95207, at *76 (S.D. Fla. June 5, 2018) (no likelihood of success where "many disputed issues of fact remain which raise questions whether either party is likely to succeed at trial").

Where the parties submit dueling, equally probative affidavits, a court must deny injunctive relief because the plaintiff has not carried its burden to show it is reasonably likely to succeed at trial. *See, e.g. Anich*, 751 So. 2d at 771 (injunctive relief denied where parties disputed whether defendant knew plaintiff's "costs, profits, and pricing structure," etc. and "[defendant] testified that [plaintiff]'s customers would be commonly known"); *B&G Equip. Co. v. Airofog USA, LLC*, 2019 U.S. Dist. LEXIS 103154, at *12-13 (M.D. Fla. June 20, 2019) (denying injunctive relief in IP litigation because parties "submitted conflicting declarations on whether [one party]'s sprayer parts were interchangeable with [the other]'s sprayer parts"); *Bay Side Recycling Co., LLC v. SKB Envtl., Inc.*, 2014 U.S. Dist. LEXIS 166688, at *37 (D. Minn. Dec. 1, 2014) (denying injunctive relief where parties submitted contradictory declarations as to whether non-competition agreement was supported by consideration).

**<u>Objection No. 5</u>: The Report And Recommendation Concluded That The Individual Defendants Have Breached Their Non-Solicitation Obligations Despite The Complete Absence Of Any Record Evidence On That Issue.**

The Report and Recommendation Concluded Accuform is likely to prove that the Individual Defendants have breached their alleged non-solicitation obligations despite a

complete absence of record evidence on that issue.  [Doc. 89 at 12, 13].  The record evidence establishes, at most, that some customers have communicated with the Individual Defendants. Even if the Court could draw an inference that sales were made, there is no evidence that defendants initiated the sales.  *See, e.g. Sunbelt Rentals, Inc. v. Dirienzo*, 2007 WL 9702762, at *5 (S.D. Fla. Apr. 10, 2007) ("[W]hen the customers voluntarily seek out the former employees, improper solicitation is not established") (collecting cases), *report and recommendation adopted*, 2007 WL 9702727 (S.D. Fla. Apr. 24, 2007).  For example, Longo testified that when customers send an inquiry to National Marker, requests are randomly routed to her, and only belatedly might the customer even realize it is with Longo whom they are communicating.  [Longo Dec., Docs. 32, ¶¶ F.6-F.8; 32-3].  To the extent that Accuform argues that the non-solicitation clause prohibits solicitation regardless of who initiates the communication, it is unenforceable.  *See, e.g.*, *Sunbelt Rentals, Inc.*, 2007 WL 9702762, at *5 ("[P]rohibiting the Defendant from *accepting* customers' business effectively restrains the trade of third parties. This country is based on a free market system, and the parties' customers should remain free to do business with whomever they see fit."  (emphasis in original)); *Cf. White*, 226 So. 3d at 785 ("section 542.335 is set against the backdrop that contracts in restraint of trade are generally unlawful. . . .  Thus, section 542.335 is a carve out of the general prohibition, striking a delicate balance between legitimate business interests and a person's inalienable right to work) (*citing,* e.g., Art. 1, § 2, Fla. Const.; § 542.18, *Fla. Stat.*).

Respectfully submitted,

/s/ Richard C. McCrea, Jr.
Richard C. McCrea, Jr.
Florida Bar No. 351539
Email:  mccrear@gtlaw.com
Tristan J. Reiniers
Florida Bar No. 0119358
Email: reinierst@gtlaw.com
GREENBERG TRAURIG, P.A.
101 E. Kennedy Boulevard, Suite 1900
Tampa, FL  33602
(813) 318-5700 – Telephone
(813) 318-5900 – Facsimile
Attorneys for Defendant
*National Marker Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 27, 2019, I electronically filed the foregoing
with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic
filing to:

Stanford R. Solomon
The Solomon Law Group
1881 West Kennedy Boulevard, Suite D
Tampa, FL  33606-1611

Matthew F. Prewitt (admitted *Pro Hac Vice)*
Lauren S. Novak (admitted *Pro Hac Vice)*
Kyle J. Jacob (admitted *Pro Hac Vice)*
Schiff Hardin LLP
233 South Wacker Drive, Suite 1700
Chicago, IL  60606

/s/ Richard C. McCrea, Jr.
Attorney

ACTIVE 48192693v6